| | |
|---|---|
| BRANDON L. GRAY, | ) |
|     Plaintiff | ) |
| v. | ) No. 1:13-cv-00438-JCN |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | ) |
|     Defendant | ) |

### MEMORANDUM OF DECISION [1]

Plaintiff Brandon L. Gray applied for disability benefits under Title II and Title XVI of the Social Security Act. Defendant Social Security Administration Acting Commissioner found that Plaintiff has severe impairments, but that he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

The matter is before the Court on Plaintiff's request for judicial review of the administrative determination. As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the September 18, 2012, decision of the Administrative Law Judge (ALJ).[2] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the ALJ's Decision.

(ALJ Decision, ECF No. 12-3, PageID # 116.)

At step 1 of the sequential evaluation process, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since January 15, 2010, the date of the alleged onset of disability. (ALJ Decision ¶ 2.) At step 2, the ALJ determined that Plaintiff suffers from the following severe impairments: hand action tremor secondary to anxiety; mood disorder NOS; post-traumatic stress disorder; anxiety disorder; learning disorder and polysubstance abuse in remission. (*Id.* ¶ 3.) At step 3, the ALJ found that the impairments, singularly and in combination, do not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.* ¶ 4.) Plaintiff does not challenge that finding.

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity (RFC). The ALJ determined that Plaintiff has a residual functional capacity for medium work limited to frequent handling, and that non-exertional limitations restrict him to simple, routine, repetitive tasks performed in a low-stress environment that does not involve production or pace work. (*Id.* ¶ 5.) Based on testimony from a vocational expert, the ALJ concluded that Plaintiff was not under a disability within the relevant timeframe because Plaintiff has the capacity to perform his past relevant work (step 4), and to perform other work available in the national economy (step 5). (*Id.* ¶¶ 6-7.)

## DISCUSSION

**A.  Standard of Review**

The Court must affirm the administrative decision provided that the ALJ applied the correct legal standard and that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir.

1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.     Analysis**

Plaintiff argues that the ALJ erred when he failed to include appropriate limitations in the RFC finding related to Plaintiff's low verbal IQ. More specifically, Plaintiff contends that the ALJ (1) did not focus on the physician recommendations regarding Plaintiff's performance on the verbal IQ subtest, but instead focused on the somewhat higher full scale results, (2) failed to observe regulations in the mental impairment section of the Listings that directed him to consider the import of the lowest test scores,[3] and (3) failed, in violation of 20 C.F.R. § 404.1527(e)(2)(ii) and § 416.927(e)(2)(ii), to discuss the opinion of consultative examiner Adrienne Butler, Ed.D., including the weight, if any, given to her opinion.

The ALJ determined that Plaintiff's RFC permits him to perform simple, routine, repetitive work in a non-stressful setting that does not impose production or pace demands. Citing the results of a WAIS-III test that was administered when he was in the second grade, Plaintiff argues that further restrictions should be included due to his difficulty with information presented through auditory/verbal channels. (Statement of Errors at 3, citing Dr. Worgull Report, Exh. 9F, PageID # 612-13.) According to the doctor by whom the test was administered, given Plaintiff's verbal IQ score, within a traditional classroom setting where knowledge is disseminated through

---

[3] Plaintiff does not allege error at step 3 of the sequential evaluation process. Rather, Plaintiff argues that the IQ considerations set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(D)(6) should have impacted the ALJ's discussion of Plaintiff's RFC.

3

predominantly auditory/verbal channels, "[Plaintiff] will learn at a slower pace than the majority of his classroom peers." (PageID # 612.)

In addition, in 2010, after conducting a WAIS-IV test, consultative examiner Adrienne Butler, Ed.D., found Plaintiff's verbal IQ to be 68, and concluded that Plaintiff would acquire new learning at a slow pace in a job-training position and would need repetition and reinforcement to acquire, retain and recall new verbal information. (Exh. 3F, PageID # 539.) Another WAIS-IV test, administered to Plaintiff in February 2012 by Lora Stanchfield, Ph.D., revealed a verbal comprehension index of 76. Dr. Stanchfield noted that Plaintiff should receive clear and concise instructions, and that he should be monitored frequently for comprehension and redirection. (Exh. 32F, PageID # 1106.)

Plaintiff maintains that the ALJ discounted these findings and recommendations, and instead relied on Plaintiff's somewhat better "full scale" IQ results rather than the lowest of his IQ results. (Statement of Errors at 4-6, citing the Listings for mental health disorders.) As a result, Plaintiff contends that the ALJ improperly failed to account for the recommendations of Drs. Worgull, Butler, and Stanchfield.

On this record, the ALJ's reliance on the "full scale" IQ results was not error. The ALJ's finding that Plaintiff's learning disabilities did not preclude work involving simple, routine, repetitive tasks performed in a low-stress, non-production-type environment is supported by substantial evidence of record, which evidence includes the psychiatric review technique and mental residual functional capacity assessments made by Brian Stahl, Ph.D. A review of the psychiatric review technique form completed by Dr. Stahl reflects that he was aware of Dr. Butler's assessment that Plaintiff's ability to learn tasks was in the "borderline" range and that Plaintiff

4

would have difficulty with adaptation. (Exh. 5F, § IV (Notes).) [4] The ALJ's finding is consistent with Dr. Stahl's assessment.

Although the ALJ did not explain the exact weight that he attributed to Dr. Butler's medical source statement, he did not ignore Dr. Butler's report. In fact, in the ALJ's discussion of Dr. Butler's findings, the ALJ plainly found Dr. Stahl's mental RFC assessment to be the most reliable when determining how Plaintiff's learning disabilities, including those measured by Dr. Butler, should be reflected in the RFC finding.

In addition, as part of his RFC assessment, the ALJ did not rely exclusively on Dr. Stahl's expert opinion. He also considered his own review of the longitudinal medical records, Plaintiff's activities of daily living,[5] and the reliability of Plaintiff's subjective complaints.[6] In short, the ALJ considered the types of evidence that a reasonable person would consider in the course of making the RFC finding. Under the circumstances, the Court is not persuaded that a remand is warranted.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of January, 2015.

---

[4] Dr. Butler's findings and recommendations related to the IQ testing that she performed on Plaintiff. Dr. Butler concluded that Plaintiff is not significantly limited as to understanding and remembering "very short and simple instructions" and most likely has the capacity to understand and remember "simple" instructions and tasks. (Exh. 6F, §§ I.B.4, III.A.)

[5] The ALJ observed that Plaintiff's "acknowledged abilities to engage in activities that require significant concentration, persistence or pace and reasoning is inconsistent with his subjective allegations of disabling mental symptoms as well as those observed by Dr. Butler." (ALJ Decision, ECF No. 12-3, PageID # 123).

[6] The ALJ wrote, "despite some mental limitations, the claimant's acknowledged abilities and improvements do not support his subjective allegations of disabling symptoms." (ALJ Decision, ECF No. 12-3, PageID # 124.)